**Affirmed and Memorandum Opinion filed April 2, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-22-00741-CV

---

## ADAMS AND REESE LLP, ADAM MASSEY, AND CASSANDRA WALSH, Appellants

## V.

## EMERALD ELECTRICAL CONSULTANTS LLC, Appellee

---

### On Appeal from the 113th District Court
### Harris County, Texas
### Trial Court Cause No. 2022-25539

---

## M E M O R A N D U M   O P I N I O N

Emerald Electrical Consultants LLC sued its attorneys Adam Massey and Cassandra Walsh, and the attorneys' firm Adams and Reese LLP, for legal malpractice. The Firm and the attorneys moved to dismiss the claims pursuant to the Texas Citizens Participation Act (TCPA) on the ground that Emerald's suit was

based on or in response to their exercise of the right to petition.[1] In a single issue, they challenge the trial court's failure to grant the motion. We affirm.

## I. THE TEXAS CITIZENS PARTICIPATION ACT

The TCPA was enacted "to encourage and safeguard the constitutional rights of persons to petition," among other rights, while "protect[ing] the rights of a person to file meritorious lawsuits for demonstrable injury."[2] If a legal action is "based on or is in response to" a party's exercise of a protected right, the party, with exceptions inapplicable here, may move to dismiss the legal action.[3] The movant bears the initial burden demonstrate that the legal action is based on or is in response to the party's exercise of the rights or conduct protected by the statute.[4] The burden then shifts to the respondent to prove that an exemption applies,[5] or alternatively, to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question."[6] A prima facie case is established if the evidence is "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted."[7] If the respondent establishes a prima facie case, then the burden shifts back to the movant

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§ 27.001–011. After this suit was filed, the TCPA was amended to exempt legal-malpractice claims. *See id.* § 27.010(a)(13). Because the amendment applies only to an action filed on or after September 1, 2023, we apply the prior version of the TCPA, under which legal-malpractice claims were not categorically exempt.

[2] *Id.* § 27.002.

[3] *Id.* § 27.003(a).

[4] *Id.* § 27.005(b).

[5] *See id.* § 27.010 (setting forth exemptions); *Toth v. Sears Home Improvement Prods., Inc.*, 557 S.W.3d 142, 152–53 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (respondent has the burden to prove the exemption applies).

[6] TEX. CIV. PRAC. & REM. CODE § 27.005(c).

[7] *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45–46 (Tex. 2021) (quoting *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding)).

to establish "an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law."[8]

## II. BACKGROUND

Emerald Electrical Consultants LLC is a Georgia company that constructs electrical substations and provides related consulting and technical services. In 2021, Emerald began working on the "Golden Pass Project," constructing an electrical substation in Texas as a subcontractor to Canyon Power Solutions, LLC.

### A. The Firm's Initial Advice

In May 2021, Emerald contacted the Florida office of law firm Adams & Reese LLP ("the Firm"), seeking advice "to ensure that payments to Emerald for services performed on the Golden Pass Project, while then not yet due, would be made in full and on time when due." The Firm included Adam Massey, an attorney from the Firm's Texas office, in a conference call with Emerald. According to Emerald, the Firm, including Massey, advised Emerald that liens related to the Golden Pass Project "could be perfected within 45 days after Emerald's work on the project was completed and to revisit the issue then, when and/or if Emerald was not paid."

But, under the applicable version of the Texas Property Code, if a lien claim arises from a debt incurred by a subcontractor, the claimant must give written notice of the unpaid balance to the original contractor "not later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material delivered."[9] The claimant must give the same notice to the

---

[8] *Id.* § 27.005(d).

[9] For this prior version of Texas Property Code § 53.056, *see* Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 8, sec. 53.056(a), 1997 TEX. GEN. LAWS 1880, 1882 (amended 2021), and Act of May 28, 1989, 71st Leg., R.S., ch. 1138, § 8, sec. 8, secs. 53.056(b)–(e), 1989 TEX. GEN.

original contractor and to the owner or reputed owner "not later than the 15th day of the third month following each month in which all or part of the claimant's labor was performed or material or specially fabricated material was delivered."[10] The claimant "must file an affidavit with the county clerk of the county in which the property is located . . . not later than the 15th day of the fourth calendar month after the day on which the indebtedness accrues."[11] According to Emerald, the Firm did not mention at that time the need to send notice letters to protect Emerald's lien rights on the Golden Pass Project.

## B. The Notice Letters

Canyon did not pay Emerald, and on July 20, 2021, Emerald contacted the Firm "to ensure collection of its invoices." The Firm put Emerald in touch with Cassandra Walsh from the Firm's Texas office. Although Emerald's outstanding invoices from the Golden Pass Project ultimately covered the period from March through August of 2021, the Firm advised Emerald that the deadlines to serve the "second-month letter," to serve the "third-month letter," and to file a lien affidavit were, respectively, August 15, 2021, September 15, 2021, and October 15, 2021. Emerald directed the Firm to send the necessary letters and file the lien affidavit, "if and/or when necessary."

After the Firm sent out second- and third-month notice letters in accordance with that schedule, Emerald and Canyon attempted to resolve the dispute through mediation on October 5, 2021. The Firm advised Emerald at the mediation that "its

---

LAWS 4693, 4696 (repealed 2021). The 2021 amendments apply only to original contracts entered into on or after January 1, 2022.

[10] *Id.*

[11] *See* prior version of Texas Property Code § 53.052, Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 5, 1997 TEX. GEN. LAWS 1880, 1881 (amended 2021).

4

lien rights were fully intact" and it was in a strong position to collect the full amount owed. Mediation was unsuccessful.

## C. Canyon's Federal Suit

The day after the unsuccessful mediation, Canyon sued Emerald in a Texas federal district court. Two days after Canyon filed suit, Walsh received a letter from the first-tier subcontractor identifying three problems with the notice letters on the Golden Pass Project. First, the project address was wrong. Second, liens could not include amounts invoiced in March, April, or May, because the deadline for notices for those amounts had passed before any notice letters were sent. And third, the notice letters had not been sent to the original contractor, identified as "CCZJV." Although Emerald told Walsh it could not independently prove that its invoices were received by the original contractor, the Firm filed a lien affidavit for the full amount invoiced.

Less than two weeks later, Canyon filed a summary motion to remove Emerald's lien based upon Emerald's failure to comply with the Texas statutes governing the perfection of mechanic's liens.[12] After Canyon filed this motion, the Firm advised Emerald for the first time "that its position on the entire lien amount was weak," and amended the lien affidavit to remove the amounts that Emerald invoiced to Canyon for work done on the Golden Pass Project in March, April, and May. A few days later, the Firm advised Emerald that the Firm could no longer represent it because the Firm also represented an owner of the Golden Pass Project, and the owner would not waive the conflict of interest. Several weeks later, Emerald

---

[12] *See* prior version of Texas Property Code § 53.160, Act of May 19, 1997, 75th Leg., R.S., ch. 526, § 17, sec. 53.160, 1997 TEX. GEN. LAWS 1880, 1884–85 (amended 2011 & 2021).

"negotiated a global settlement with Canyon that included the Golden Pass Project as well as projects in Florida."[13]

## D. This Lawsuit

Not long after the settlement, Emerald sued the Firm and its Texas attorneys, Adam Massey and Cassandra Walsh, for legal malpractice. Because Emerald seeks not only to hold Massey and Walsh individually liable but also to hold the Firm vicariously liable for their conduct and for the conduct of other unnamed attorneys, we include the Firm's attorneys in our future references to "the Firm."

The Firm moved to dismiss Emerald's claims on the ground that the legal action is based on its attorneys' exercise of the right to petition. In response, Emerald argued alternatively that the TCPA does not apply; that the TCPA's commercial-speech exemption does apply; and that the evidence offered in support of Emerald's response established a prima facie case of each essential element of Emerald's legal-malpractice claim.

The trial court allowed the motion to be overruled by operation of law and the Firm brought this interlocutory appeal.

## III. ANALYSIS

In a single issue, the Firm contends that the trial court erred in denying its motion to dismiss. We review de novo whether the TCPA applies. *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023). We likewise review the proper construction of the TCPA de novo. *In re Panchakarla*, 602 S.W.3d 536, 540 (Tex. 2020) (orig. proceeding) (per curiam).

---

[13] Nothing else is known about the settlement.

Beginning with the first step of the TCPA's burden-shifting procedure, the Firm argues that the trial court erred in denying its motion to dismiss because Emerald's suit "is based on or is in response to" the Firm's exercise of the right to petition. TEX. CIV. PRAC. & REM. CODE § 27.003. The nature of an action is determined by the plaintiff's allegations,[14] and "we view the pleadings in the light most favorable to the nonmovant, favoring the conclusion that its claims are not predicated on protected expression." *Sanchez v. Striever*, 614 S.W.3d 233, 246 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (quoting *Damonte v. Hallmark Fin. Servs. Inc.*, No. 05-18-00874-CV, 2019 WL 3059884 at *5 (Tex. App.—Dallas July 12, 2019, no pet.) (mem. op.)). Here, Emerald alleged that the Firm committed legal malpractice by

a.   Failing to properly understand, explain, and implement an appropriate course of action as to the perfection of any and all lien rights and remedies arising from or associated with its performance of work done on the Golden Pass Project;

b.   Failing to timely and properly advise [Emerald] to file, send, and/or deliver[] all notices as required by law;

c.   Failing to timely and properly advise [Emerald] regarding the validity of its lien;

d.   Providing incorrect advice regarding Texas law as [it] pertains to the perfection and enforcement of valid enforceable liens for work performed on the project(s) in question; [and]

e.   Failing to timely inform [Emerald] of its conflict of interest . . . ."[15]

---

[14] *See Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017).

[15] Emerald also alleged that the Firm committed malpractice by "[b]illing for and collecting fees from [Emerald] for work performed while actively conflicted between [Emerald] and at least one other client." The Firm did not address this factual allegation in the trial court or on appeal.

The Firm contends that Emerald's allegations fall within two of the TCPA's several definitions of the exercise of the right to petition. We address each definition separately.

## A. Communications "In or Pertaining to" a Judicial Proceeding

The TCPA defines the exercise of the right to petition as, among other things, "a communication in or pertaining to . . . a judicial proceeding." TEX. CIV. PRAC. & REM. CODE § 27.003(4)(A)(i). Setting aside for the moment the allegation regarding the Firm's failure to inform Emerald of its conflict of interest, all of Emerald's allegations made the subject of the TCPA motion concerned the Firm's advice, and the Firm's actions to implement that advice, concerning the perfection and enforceability of Emerald's lien on the Golden Pass Project. The Firm argues that because Emerald would have had to obtain a court judgment in order to foreclose a lien on the Golden Pass Project,[16] all of these allegations pertain to "pending or potential lawsuits." This argument suffers from at least three flaws.

First, the TCPA defines "communication" broadly to include "the making or submitting of a statement or document in any form or medium." TEX. CIV. PRAC. & REM. CODE § 27.001(1). But most of Emerald's allegations—including the allegation regarding the Firm's failure to timely inform Emerald of its conflict of interest—concern failures to communicate rather than communications. Under this Court's precedent, the failure to communicate is not a communication and therefore does not constitute the exercise of the right to petition. *See DOJO Bayhouse, LLC v. Pickford*, No. 14-20-00237-CV, 2021 WL 6050677, at *4 (Tex. App.—Houston [14th Dist.] Dec. 21, 2021, no pet.) (mem. op.).

---

[16] *See* TEX. PROP. CODE § 53.154 ("A mechanic's lien may be foreclosed only on judgment of a court of competent jurisdiction foreclosing the lien and ordering the sale of the property subject to the lien.").

Second, and contrary to the Firm's arguments at trial and on appeal, the phrase "a judicial proceeding," as used in this definition of the exercise of the right to petition, does not encompass communications related to "potential lawsuits." Rather, "a judicial proceeding" means a judicial proceeding that is actually pending, not to a suit that has not yet been filed. *See QTAT BPO Sols., Inc. v. Lee & Murphy Law Firm, G.P*, 524 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Levatino v. Apple Tree Cafe Touring, Inc.*, 486 S.W.3d 724, 728–29 (Tex. App.—Dallas 2016, pet. denied). Because Canyon did not sue the Firm until October 6, 2021, none of the Firm's communications with Emerald regarding the Golden Pass Project before that date were communications in or pertaining to a judicial proceeding.[17]

The only remaining communication alleged to constitute malpractice is the Firm's preparation and filing of the lien affidavit among the property records of two counties.[18] Although these actions constitute "communications" and were performed while Canyon's suit was pending, they do not "pertain" to that suit. "We construe the phrase 'pertaining to' according to its ordinary meaning as relating directly to or concerning or having to do with." *Jetall Cos. v. Hoover Slovacek LLP*, No. 14-20-00691-CV, 2022 WL 906218, at *3 (Tex. App.—Houston [14th Dist.] Mar. 29, 2022, pet. denied) (mem. op.) (citing *Pertain*, BLACK'S LAW DICTIONARY (11th ed. 2019)). Preparing and filing the lien affidavit did not pertain to the pending judicial

---

[17] Emerald does not allege that the Firm provided negligent advice or representation regarding Emerald's Florida projects.

[18] Two other statements mentioned in Emerald's petition—the Firm's statement that Emerald's position regarding the entire lien amount on the Golden Pass Project was weak and that the Firm could no longer represent Emerald due to a conflict of interest—are not alleged by Emerald to have constituted malpractice; rather, Emerald complains of the Firm's pre-suit statement that Emerald's lien position was strong and the Firm's failure to inform Emerald at the outset of the conflict of interest.

9

proceeding, because according to Emerald, it instructed the Firm in July 2021—months before Canyon filed suit—to send the notice letters and file the lien affidavit in accordance with the schedule the Firm gave Emerald. That schedule required the Firm to file the lien affidavit by October 15, 2021, and the Firm did so. The Firm undertook that obligation prior to, and independently of, any later lawsuit. [19]

Having concluded that Emerald's legal-malpractice claims are not based on or in response to the Firm's communication in or pertaining to a judicial proceeding, we consider the next definition on which the Firm relies.

**B.      Communications "Reasonably Likely to Encourage Consideration or Review" by "a Judicial Body"**

The TCPA also defines the exercise of the right to petition as "a communication that is reasonably likely to encourage consideration or review of an issue by a . . . judicial . . . body." TEX. CIV. PRAC. & REM. CODE § 27.003(4)(C). Again relying on the Texas statute specifying that a court judgment is necessary to enforce a mechanic's lien, the Firm argues that advice to a client about the notices and affidavits needed to perfect a lien constitute the exercise of the right to petition because they are communications that are "reasonably likely to encourage consideration or review" of the issue. But again, the Firm is mistaken.

The Firm's advice to Emerald about the letters and affidavits needed to perfect a mechanic's or materialman's lien is not itself reasonably likely to encourage judicial consideration of an issue. At best, the steps taken to perfect a lien may affect the merits of an action to foreclose or remove the lien, should such an action be

---

[19] In its suit against Emerald, Canyon alleged violations of the Defend Trade Secrets Act and the Racketeer Influenced and Corrupt Organizations Act, trade-secrets misappropriation, unfair competition, unjust enrichment, tortious interference with existing contracts and with prospective business relations, fraudulent inducement, common-law fraud, breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, breach of contract, conversion, trespass to chattels, unauthorized access of a computer, spoliation of evidence, and civil conspiracy.

brought, but an attorney's privileged advice to a client about perfecting a lien is not itself reasonably likely to bring the matter before a court. Indeed, Emerald sought the Firm's advice "to ensure that payments to Emerald for services performed on the Golden Pass Project, while then not yet due, would be made in full and on time when due," thereby obviating the need for judicial consideration.

Likewise, the actual notice letters and lien affidavits drafted and served or filed by the Firm are not reasonably likely to encourage judicial consideration of an issue. That is simply not their purpose. The Property Code requires a mechanic or materialman to serve notice letters on the actual or reputed property owner and on the original contractor to notify them of an unpaid debt so they can protect their interests. *See Am. Indem. Co. v. Da-Col Paint Mfg. Co.*, 508 S.W.2d 944, 947 (Tex. App.—Dallas 1974, writ granted) ("The purpose of requiring notice to the original contractor is to keep him advised of unpaid bills of his subcontractors so that he can protect himself against paying twice for the same materials."), *rev'd on other grounds*, 517 S.W.2d 270 (Tex. 1974). The Property Code requires lien affidavits to be served on the owner and filed and recorded by the county clerk to provide notice to the owner and to third parties of the encumbrance. *See Addison Urban Dev. Partners, LLC v. Alan Ritchey Materials Co.*, 437 S.W.3d 597, 607 (Tex. App.—Dallas 2014, no pet.). Such notice letters and lien affidavits may be reasonably likely to encourage upstream contractors and the property owner to consider an issue, but they do not have the same effect on a judicial body. They may influence *how* a judicial body would decide an issue but not *whether* it would do so.

Because we conclude that the Firm failed in its initial burden to show that Emerald's allegations are based on or in response to the exercise of the right to petition by the Firm or its attorneys, we overrule the sole issue presented.

11

## IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of the Firm's motion to dismiss.

/s/    Tracy Christopher
        Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Jewell.